**Rafael Idelfonso CAMPOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–98–034–CR.

Court of Appeals of Texas, Waco.

Aug. 31, 1998.

William G. Mason, Lummus, Hallman, Pritchard & Baker, P.C., Cleburne, for appellant.

Dale Hanna, District Attorney, David W. Vernon, Assistant District Attorney, Cleburne, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Rafael Campos was convicted of two counts of aggravated sexual assault of a child, six counts of indecency with a child by contact, and two counts of indecency with a child by exposure. A jury assessed punishment at confinement for twenty years in counts one through six, forty years in counts seven and nine, and ten years in counts eight and ten. A fine of $5,000 was also assessed. He appeals his conviction, presenting six issues for review. Finding the evidence sufficient to sustain the conviction, finding no error in admitting testimony, and finding no abuse of discretion in admitting Campos' confession, we will affirm the judgment.

## FACTS

When A.Y. was approximately six-years-old, she told her mother, Lisa, that Campos had sexually assaulted her. When her mother stated that she was going to confront Campos, A.Y. recanted her story, indicating that it was a joke. It was not until three years later that A.Y. again mentioned the abuse. On February 24, 1997, A.Y. told her third grade teacher, Tracy Coontz, and her guidance counselor, Gwen Staigner, that Campos had touched her "private area" and threatened to kill her cat if she told anyone. The allegations were reported to Kellie Chavez, an investigator with the Texas Department of Protective and Regulatory Services (DPRS).

Chavez and two officers from the Burleson Police Department, Tony Yocham and Jason Buchanan, took a statement from A.Y. as well as from Lisa. Yocham and Buchanan then went to Huguley Nursing Center where Campos was employed and asked him to cooperate in the investigation. Campos rode with Yocham and Buchanan to the police department, where he signed a statement in which he admitted "rubbing" on A.Y. both outside and underneath her clothes. He stated that sometimes his hand would "slip"

inside her underwear. Shortly after giving this confession, Campos was arrested.

## OUTCRY TESTIMONY

Campos' first issue complains that the court erroneously admitted hearsay testimony. Hearsay testimony may be admitted in the prosecution of an offense committed against a child, twelve years of age or younger, provided the witness was the first person age eighteen or older to whom that child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.1998). "Statement about the offense" means the child gave more than a general allusion of sexual abuse, describing the alleged offense in some discernible manner. *Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim. App.1990). The statement must be more than words that give "a general allusion that something in the area of child abuse [is] going on." *Id.; see Villalon v. State,* 805 S.W.2d 588, 592 (Tex.App —Corpus Christi 1991, no pet.).

The trial court has broad discretion in determining the proper outcry witness. *See Schuster v. State,* 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd) (citing *Garcia,* 792 S.W.2d at 92). We do not disturb the trial court's determination absent an abuse of discretion. *Id.*

Prior to trial, the State filed two documents noticing Campos of its intent to use a hearsay statement. One notice designated Coontz and Staigner as "the first persons 18 years of age or older to whom the child made a statement about the offense," while the other designated Lisa as the outcry witness. At trial, the State indicated that it intended to call Coontz as the outcry witness. In accordance with article 38.072 of the Code of Criminal Procedure, the trial court conducted a hearing outside the presence of the jury to determine whether Coontz was authorized to testify regarding A.Y.'s outcry. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § (a)(2) (Vernon Supp.1998). Although he did not call Lisa to testify, Campos objected, stating that Coontz was not the proper witness because Lisa was the first person to whom A.Y. outcried. In support of his contentions, Campos pointed to Lisa's written statement

which noted that A.Y. told her of abuse around 1993 or 1994. The court found Coontz's testimony admissible. We find that the court did not abuse its discretion in so finding.

The statement A.Y. made to Lisa was made when A.Y. was approximately six years old, somewhere between 1993 and 1994. The complaints against Campos were alleged to have occurred between November 15, 1996, and February 22, 1997. Thus, any statement made to Lisa was not made in reference to the allegations in the indictment. Coontz testified that A.Y. told her that she had been abused "last year." [1] It was reasonable for the court to conclude that Coontz was the first person over 18 to whom A.Y. told of the abuse alleged in the indictment. Issue one is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ Campos argues that the evidence is legally and factually insufficient to prove that he "acted with the intent of sexual gratification or sexual arousal." *See* Tex. Pen.Code Ann. § 21.11(a)(1), (a)(2) (Vernon 1994). He argues that "there is no evidence that [he] had an erection, masturbated, or ejaculated during these alleged incidents." He does not dispute that the requisite intent may be inferred from his conduct, his remarks, and the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981). Rather, he argues that there are no facts from which to infer his intent. We disagree.

LEGAL SUFFICIENCY

■ In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. filed). The evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 238 (Tex.Crim.App.1997). When determining the appellant's intent, we will defer to the factfinder's resolution of conflicting inferences. *Tyler v. State*, 950 S.W.2d 787, 788 (Tex. App.—Fort Worth 1997, no pet.).

A.Y. testified that Campos sexually abused her periodically for approximately three years. She testified that he touched her "chest area" and her "private areas" with his hands and that he touched her with "his private part" on numerous occasions. She testified that she asked him to stop, but that he refused. She further testified that he threatened to kill her cats if she told anyone. Coontz's and Lisa's testimony corroborated A.Y.'s allegations. The testimony revealed that Campos had touched A.Y. "fifteen times or more." Further, Campos' voluntary confession was admitted into evidence in which he admitted "rubbing" on A.Y. "sometimes." He further admitted that this "rubbing" sometimes occurred under A.Y.'s clothing.

---

1. It is true that in the absence of evidence that the offenses occurred on the dates alleged in the indictment, the State could be entitled to rely upon instances of prior conduct which, other than the date alleged, meet the description of the offenses in the indictment. *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex.Crim.App.1997). However, the evidence offered at trial supports the allegations in the indictment, alleged to have occurred in 1996 and 1997. Campos requested and received a limiting instruction, deeming any prior conduct extraneous. *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988)("where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would

rely for conviction"); *Crawford v. State*, 696 S.W.2d 903, 905–06 (Tex.Crim.App.1985).

The limiting instruction stated:

You are instructed that evidence of other crimes, wrongs or acts committed by The Defendant against [A.Y.] are admitted for their bearing on relevant matters which includes, number one, the state of mind by The Defendant and [A.Y.] and two, the previous and subsequent relationships between The Defendant and [A.Y.]. From time to time I will give you instructions throughout the course. You will listen to those instructions plus the written instructions that I give you at the end before you make any determination. Does everybody understand that? All right. Go ahead Mr. Mason.

■ Evidence of a common pattern of similar acts is admissible as tending to prove intent. *Ranson v. State*, 707 S.W.2d 96, 97 (Tex.Crim.App.1986). Based on the testimony at trial and Campos' confession, a rational trier of fact could have reasonably inferred that Campos touched A.Y. with the intent to gratify his sexual desires. *Id.* (evidence of the defendant's conduct demonstrated a pattern of sexual abuse and, in the light most favorable to the verdict, discharged the State's burden of proving said requisite specific intent). Issue two is overruled.

FACTUAL SUFFICIENCY

The sufficiency of the evidence is measured only by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik*, 953 S.W.2d at 240. In conducting a factual-sufficiency review, we examine all of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim. App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The jury is the judge of the facts and we will defer to the jury, finding the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407.

In addition to the evidence listed above, Campos testified at trial and denied the allegations against him. He testified that his confession was not voluntarily given, but rather that he merely signed whatever the officers told him to sign without reading it. He also called approximately nine character witnesses who testified that he was a good friend and employee, and that they did not believe the allegations against him. Considering all the evidence offered at trial, we cannot say that the verdict is so contrary to the great weight of the evidence as to be

clearly wrong and unjust. *Id.* Issue three is overruled.

A.Y.'S WRITTEN STATEMENT

■ Campos' fourth issue urges that the court erred in admitting A.Y.'s written statement under Rule of Evidence 801(e)(1)(B), which allows such a statement to rebut a charge of improper influence or motive. TEX.R. EVID. 801.[2] The court found the statement admissible because counsel for Campos had questioned A.Y. about prior meetings with prosecutors, prior trips to the courtroom, whether anyone promised to do something "fun" with her after she testified, and whether anyone offered her any candy prior to her testimony. This line of questioning implies that A.Y.'s testimony was influenced. We do not find that the court abused its discretion in admitting the statement. Issue four is overruled.

EXPERT TESTIMONY

■ In his fifth issue, Campos argues that Connie Rafaleides should not have been allowed to testify because her testimony was not sufficiently reliable and relevant, and did not assist the factfinder in understanding the evidence. Rule 702 contains three requirements for the admission of expert testimony: (1) the witness must be qualified; (2) the proposed opinion testimony must be grounded in "scientific, technical, or other specialized knowledge"; and (3) the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." TEX.R. EVID. 702.[3]; *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App.1992). Additionally, the evidence must be relevant and reliable and must withstand a Rule 403 inquiry.[4] In *Fowler v. State* we addressed the admissibility of expert testimony with regard to the "soft sciences." *Fowler v. State*, 958 S.W.2d 853, 860–64 (Tex.App.—Waco 1997, pet. granted). We held that:

2. Former Rule of Criminal Evidence 801, which was in effect at the time of trial, is substantively the same.

3. Former Rule of Criminal Evidence 702, which was in effect at the time of trial, is substantively the same.

4. This is a question that we have looked at before. *See Fowler v. State*, 958 S.W.2d 853 (Tex. App.—Waco 1997, pet. granted). However, in *Fowler*, the State argued that *Kelly* factors did not apply to specialized knowledge. Here, the State assumes such applicability and attempted to meet the factors to show relevancy, reliability, and jury assistance.

Rule 702 makes no distinction between scientific, technical, or specialized knowledge. The evidence under the rule is treated collectively. Thus, until we are directed (1) how to differentiate between "scientific knowledge" and "specialized knowledge," and (2) what is the appropriate standard for reviewing testimony from an expert with "specialized knowledge," we are not persuaded that this is a necessary distinction. If the specialist who is testifying cannot explain to the court a theory used to reach his or her conclusions, the way that theory is applied by others with the same "specialized knowledge," and the way it will be applied in the present case, why should such evidence be said to be reliable enough that it will assist a jury? In making this determination about scientific evidence, *Kelly* lists seven *nonexclusive* factors for the trial court to consider. We acknowledge that each of the factors may not be satisfied by the proponent of the evidence. Indeed, all may not apply. There may be others. We believe that if at least some of the *Kelly* factors cannot be satisfied, then the testimony should be excluded.

*Id.* at 864. Since we decided *Fowler*, the Court of Criminal Appeals has addressed this question. *See Nenno v. State*, 970 S.W.2d 549, 559–562 (Tex.Crim.App.1998). In *Nenno*, the Court considered the admissibility of expert testimony regarding future dangerousness during the punishment stage of the trial. The Court stated, "[t]he question we confront today is whether *Kelly* is applicable to *nonscientific* expert testimony (i.e. that involving technical or other specialized knowledge). The answer to that question is a qualified 'yes.' " *Id.* at 560. The appropriate questions when dealing with "soft" sciences are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Id.* at 561. We will review the testimony with these questions in mind.

Rafaleides testified outside the presence of the jury regarding her qualifications. She testified that her education includes a bachelor's degree in education, a master's degree in both Spanish and counseling, and training to become a licensed professional counselor and a "registered play therapist." She explained that her training included study, passing an examination, and 2,000 hours of supervised "clock hours." She testified that her training and work under supervision was done at the University of North Texas. Rafaleides testified that she began working as a school counselor in 1983, but that she was a teacher before that. She then moved to working part time with Family Services in Fort Worth. She testified that she also worked at the Johnson County Juvenile Detention Center working with offenders and their parents. At the time of trial, Rafaleides was working with children at Head Start. She testified that she has counseled possibly thousands, but certainly hundreds of children, approximately seventy-five percent of whom were victims of child abuse. She testified that she has been using play therapy since 1992 and that, in her opinion, it is accepted within the counseling community as a legitimate form of counseling. When asked whether she had some specialized knowledge beyond that which the jurors would know, Rafaleides responded that she did because she has been trained to interpret the actions of children. Rafaleides testified that she has not written any articles or been published in any way, but that she has lectured and testified on at least three occasions prior to this one.

Campos did not call any witnesses to rebut the legitimacy of Rafaleides' claimed field of expertise. He did not offer any publications which questioned the legitimacy of play therapy, nor did he indicate a doubt as to its legitimacy by cross-examining Rafaleides. Rather, Campos questioned whether Rafaleides personally possessed "specialized knowledge" within the meaning of Rule 702. He expressed concern that Rafaleides might be permitted to testify as to A.Y.'s truthfulness, and the court ruled that any such testimony would not be tolerated. In fact, the court warned the State that a mistrial would be granted if any such comments were made.

Rafaleides thoroughly explained the methodology regarding play therapy. She testi-

fied that her office is filled with specific toys and activities which are chosen specifically to encourage children to express their feelings. She testified that she has thoroughly studied the behavior of abused children, and has been trained to recognize that behavior. Her testimony dealt specifically with her knowledge regarding the usual behavior of abused children and whether A.Y. demonstrated that behavior.[5] We find that the court acted within its discretion in finding this testimony relevant, reliable, and helpful to the jury. *See Nenno,* 970 S.W.2d at 562; *Kelly,* 824 S.W.2d at 572.

Campos also made a Rule 403 objection. We note again that Rafaleides did not testify regarding A.Y.'s truthfulness. Rather, she testified regarding her knowledge concerning the behavior of children who have been sexually abused. We find that the court did not err in determining that the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice. *Id.* Issue five is overruled.

## CAMPOS' STATEMENT

■ In his sixth and final issue, Campos complains that the court erred in finding that his statement to the police was freely and voluntarily given. Article 38.21 of the Code of Criminal Procedure provides that a statement of an accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979). If that statement is reduced to writing, it is only admissible if the face of the statement shows that the accused received the proper warnings from a magistrate or from the person to whom the statement was made. *Id.* art. 38.22. Because the validity of Campos' statement was ques-

tioned, the court held a hearing to determine whether the statement was made voluntarily.

At the *Jackson v. Denno* [6] hearing, Officers Tony Yocham and Jason Buchanan testified that they took Campos' statement. Yocham testified that he advised Campos of his constitutional rights immediately upon arriving at the police station. He testified that the rights were read off a *Miranda* [7] card, and that Campos indicated he understood his rights and wanted to talk. Yocham testified that Campos then signed the card and he and Buchanan signed it as well. Yocham testified that Campos was never forced, threatened, or coerced into talking. He testified that Campos was never promised anything in exchange for his statement. Yocham testified that Campos never requested an attorney. Yocham testified that after Campos had made an oral statement, the officers once again read his rights to him and asked whether he would like to waive those rights and give a voluntary written statement. Yocham testified that Campos stated he would. Yocham stated that Campos signed the written statement in his presence, as well as in the presence of Buchanan and a notary.

Buchanan's testimony closely resembled Yocham's. Both testified that Campos had a good command of the English language, that no one had difficulty understanding him, and that he seemed to have no difficulty understanding them. Cherie Robinson testified that she asked Campos, "[i]s this true to the recollection of your knowledge?" and witnessed his signature in her capacity as notary.

Campos testified that he did not have a completed education, he had difficulty with English, and that he had never had any contact with police prior to the day his statement was taken. He testified that when the police requested that he come to the police

---

**5.** In the jury's presence, Rafaleides testified that she met with A.Y. ten times over a period of eight months. She testified that A.Y. drew several pictures, including a picture of a tree and of a house. Rafaleides testified that she had "studied a lot of art therapy," and that abused children generally draw "X's" in the houses and holes in the trees. She testified that A.Y.'s pictures contained these symbols. Rafaleides testified that A.Y. always chose to play in the sandbox, where her play always ended with the male doll "gone"

or "dead." Finally, Rafaleides testified that sexually abused children often feel guilty, sad, frustrated, confused, and angry. She testified that she had observed all of these feelings in A.Y.

**6.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**7.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

station, he did not understand why, nor did he feel that he was free to say "no." Campos testified that once they had arrived at the police station, he requested a lawyer, but that Officer Yocham replied, "No, sir. No way." Campos testified that he was afraid and did not feel free to leave. He testified that he only signed the statement because the officers "made" him, telling him "you have to sign this." Campos testified that he did not remember waiving his rights and did not make or sign the statement voluntarily.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony during suppression hearings. *Kelley v. State,* 817 S.W.2d 168, 174 (Tex.App.—Austin 1991, pet. ref'd). The court may believe or disbelieve any or all of the testimony, including that of the accused. *Burdine v. State,* 719 S.W.2d 309, 318 (Tex.Crim.App.1986). We will not disturb the court's ruling absent a clear abuse of discretion. *Meek v. State,* 790 S.W.2d 618, 620 (Tex.Crim.App.1990); *Kelley,* 817 S.W.2d at 174. Considering all of the evidence regarding the circumstances surrounding the taking of Campos' statement, we find that the court's ruling to admit the statement was not an abuse of discretion.

Issue six is overruled.

The judgment is affirmed.