In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00236-CR


______________________________




ROBERT KEITH BECKER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 221st Judicial District Court


Montgomery County, Texas


Trial Court No. 00-06-03792-CR




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Robert Keith Becker appeals his conviction for indecency with a child, Tex. Pen. Code Ann.
§ 21.11 (Vernon Supp. 2002), enhanced to a first-degree felony, for which he was sentenced to a
term of thirty years' confinement in the Texas Department of Criminal Justice-Institutional Division. 

 Becker raises one issue on appeal; the State also asserts a cross-point pertaining to the legality
of Becker's punishment. We will affirm Becker's conviction, but reverse and remand for a new trial
regarding punishment.

 On August 24, 1999, Becker was visiting Diane Kiddy's home in Willis, Montgomery
County, Texas. Diane, her husband, her ten-year-old grandson, R.G., and Pamela, R.G.'s mother,
all lived at that home. Diane was a member of the Piney Shores Resort, located near Willis, and
helped with the stables on weekends. Becker's mother, Christine, who was in the house-cleaning
business, was also a member of Piney Shores Resort. Diane had previously hired Christine to clean
her house. Diane and Becker were members of the New Waverly Trail Riders' Association. Diane
also boarded Becker's horse on her property.

 On his August 24 visit, Becker took R.G. and R.G.'s aunt, Stormy, swimming in the Piney
Shores Resort swimming pool in the early afternoon. While at the pool, Becker and R.G. were off
by themselves, and Becker encouraged R.G. to float around the pool, while Becker touched R.G.'s
penis. After getting out of the pool, the two of them went to the clubhouse, where Becker offered
R.G. five dollars to allow Becker to touch his penis to see if it was hard. R.G. accepted the money,
and stated that Becker put his hand up his leg and touched his penis. Around 5:00 or 5:30 p.m.,
Becker and R.G. returned to Diane's house for dinner, and after dinner, R.G. and Becker were alone
in the kitchen loading the dishwasher. Becker again offered R.G. five dollars for a chance to touch
his penis, which R.G. accepted and permitted such touching by Becker. They both then went to an
upstairs room to watch television. During this time, Becker asked R.G. if the touching felt good and
made him happy; R.G. responded in the negative.

 Pamela checked on the two of them occasionally during the evening, and noticed that R.G.
appeared to be uncomfortable around Becker. Eventually, around 7:30, Pamela asked Becker to
leave, and after Becker's departure, she talked to R.G., who related his experiences to her. Pamela
then woke her mother and stepfather and called the police.

Prior Consistent Statement

 In his only issue on appeal, Becker contends the trial court erred in overruling his objection,
on hearsay grounds, to the State's questioning of one of the investigating officers concerning a
statement given by R.G. to the officer who responded to the first call regarding the alleged indecency
with a child.

 Montgomery County Deputy Thomas Lopatowski responded to the indecency with a child
call in the late evening of August 24, 1999. He spoke with R.G. on that date at approximately 11:30
p.m. The assistant district attorney asked Deputy Lopatowski what R.G. had told him during the
interview:

 A Yes, sir. I spoke with her son. I believe his name was . . . . [R.G.].

 

 Q Okay. And did you speak with him in regard to the allegations of this
case?

 

 A Yes, sir, I did.

 

 Q Okay. Where did you speak with him, if you recall?

 

 A He was sitting upstairs in the television room, T.V. room.

 

 Q Okay. Did you ask him what happened?

 

 A Yes, sir, I did.

 

 Q Okay. Can you tell the jury what he told you that occurred?

 

 [Defense Counsel]: Objection. Hearsay.

 

 THE COURT: Sustained.

 

 [Prosecutor]: Your Honor, may we approach?

 

 THE COURT: Yes, sir.

 

 [Prosecutor]: I have case law. 

 

 (At the bench, on the record.)

 

 [Prosecutor]: Your Honor, we would offer this as a prior
consistent statement 801(e) (1) (B). It is normally hearsay; however, due to some
cross-examination yesterday I believe it is now admissible due to the fact that the
victim's testimony was impeached. And what I am referring to is that there was a
cross-examination about the number of people that the victim had spoken to about
this. He had spoken to the police. He had spoken to the D.A.'s office and spoken to
somebody at Safe Harbor. There is a case that is on point in this area. I grabbed the
wrong case. If I may have a moment.

 

 THE COURT: Yes, sir.

 

(Emphasis added.) The trial court changed its ruling, overruling the objection.

 The State contends that defense counsel's "hearsay" objection did not sufficiently comport
with Becker's argument now raised on appeal. Defense counsel also objected as Deputy Lopatowski
was reciting R.G.'s statement, based on improper bolstering. The State contends that this objection,
too, is insufficient. 

 The general prerequisite for preserving a complaint for appellate review is a showing from
the record that: 1) the complaint was made to the trial court by means of a request, objection, or
motion that was timely and sufficiently specific to make the trial court aware of the grounds of
complaint; and 2) the trial court ruled adversely. Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim.
App. 1999). 

 The portion of the trial proceedings emphasized above, as well as the nature of the
evidentiary rule in question, refute the State's contention. After the hearsay objection, the State
conceded that in most instances the hearsay objection should be sustained. He argued that the
question was proper under an exception to the hearsay rule and provided case law to support his
argument. The trial court, after reviewing the cited case authority, changed its ruling by overruling
the objection. Further, we note that Tex. R. Evid. 801(e) relied on by the State to support admission
of R.G.'s statement is headed by the caption "Statements Which Are Not Hearsay," and goes on
to state: "A statement is not hearsay if" and lists specific types of evidence falling under such
exception including (1)(B), in which the declarant testifies at trial and is subject to cross-examination
concerning the statement, and the statement is consistent with the declarant's testimony and is offered
to rebut an express or implied charge against the declarant of recent fabrication or improper motive
or influence. The State relies on Meyers v. State, 865 S.W.2d 523 (Tex. App.-Houston [14th Dist.]
1993, pet. ref'd). However, the objection in that case was held to be insufficient to preserve a
complaint on admission of evidence for appellate review because "[n]one of the participants at trial
could have reasonably understood appellant's objection . . . ." Id. at 525. In the present case, from
a reading of the record as cited above, it is clear that all parties understood the objection, the initial
ruling and the reason for the trial court's change of ruling. Meyers cites Lankston v. State, 827
S.W.2d 907 (Tex. Crim. App. 1992), in which the Texas Court of Criminal Appeals stated:

 Identifying challenged evidence as hearsay or as calling for hearsay should
be regarded by courts at all levels as a sufficiently specific objection, except under
the most unusual circumstances. 

 

Lankston, 827 S.W.2d at 910. The court therein examined the sufficiency of the objection in light
of the context in which it was made, noting that based on the comments of the trial judge and the
prosecutor, the objection was understood. Id. at 911. Our examination of the contents of defense
counsel's objection, as noted above, certainly manifests an understanding of the nature of the
objection by all concerned. We hold that this objection was sufficient to preserve Becker's issue on
appeal for appellate review. (1)

Becker's Issue on Appeal

 Becker contends the trial court erred in admitting, over his hearsay objection, R.G.'s
statement made to Deputy Lopatowski on the night of the incident. The State contends the evidence
is admissible under Tex. R. Evid. 801(e)(1)(B), arguing that defense counsel's cross-examination
of R.G., inquiring into the numerous statements given to his parents, the police, Safe Harbor shelter
personnel, and the district attorney's office, constituted an express or implied charge of recent
fabrication or improper motive or influence, and, therefore, the question regarding R.G.'s statement
to the deputy is offered in proper rebuttal under the rule. 

Standard of Review

 A trial court's ruling on the admission or exclusion of evidence may not be disturbed on
appeal unless abuse of discretion is shown. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App.
1993). The appellate court looks to see whether the trial court acted without reference to any guiding
rules or principles; that the appellate court may decide the ruling differently does not demonstrate
abuse of discretion. The trial court's determination will not be reversed if its ruling is within the
zone of reasonable disagreement. Hardin v. State, 20 S.W.3d 84, 90 (Tex. App.-Texarkana 2000,
pet. ref'd). (2)

Rule 801(e)(1)(B)

 The following definitions apply under this article:

 

 (e) Statements Which Are Not Hearsay. A statement is not hearsay if:

 

 (1) Prior Statement by witness. The declarant testifies at the trial or hearing
and is subject to cross-examination concerning the statement, and the statement is:

 

 . . . .

 

 (B) consistent with the declarant's testimony and is offered to rebut an
express or implied charge against the declarant of recent fabrication or
improper influence of motive; . . . .

 

This rule has also been held to require that such prior consistent statement be made before the
alleged improper influence or motive. McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App.
1997); Haughton v. State, 805 S.W.2d 405, 408 (Tex. Crim. App. 1990). In Haughton, the Court
stated

 But the prior consistent statements have been so admissible only when the statements
were made prior to the time the supposed motive to falsify arose. Only then was the
prior consistent statement "relevant" on the issue of credibility; that is, it tended to
make the trustworthiness of the witness's in-court testimony more probable, after that
testimony had been assailed, inasmuch as the consistency of the prior statement with
the witness's testimony at trial made it "appear that the statement in the form now
uttered was independent of the [alleged] discrediting influence."

 

805 S.W.2d at 408 (quoting United States v. Quinto, 582 F.2d 224, 232-33 (2d Cir. 1978)).

 Becker argues that defense counsel's questioning regarding the number of statements and
interviews given by R.G. was merely following up the State's questioning of the witness regarding
previous interviews. It is true that the assistant district attorney asked R.G. if he had spoken to him
on a prior occasion and if R.G. had previously spoken to police. However, the cross-examination
went far beyond these prior statements and discussions, inquiring into prior discussions with his
family, counselors, people at Safe Harbor, his aunt, and the district attorney's investigator. R.G.'s
statement to the police was then clearly offered to rebut evidence of (and implications arising from)
these other discussions R.G. had regarding his experience with Becker. "Rebuttal evidence" is
evidence given to disprove facts given in evidence by an adverse party. Valley Indus., Inc. v. Cook,
767 S.W.2d 458, 462 (Tex. App.-Dallas 1988, writ denied). It is further clear that the purpose of
the questions was to imply to the jury that R.G.'s story had been fabricated, i.e., put into his head by
one or more of the many individuals he spoke to before trial. Although there are many possible
reasons to cross-examine a witness, they generally fall into three categories: 1) getting information
in evidence; 2) attacking the logic of the opponent's case; and 3) attacking the credibility of a
damaging witness. See Lamont A. Jefferson & Barry F. McNeil, Cross Examination, in 1 State
Bar of Tex. Prof. Dev. Program, advanced Civil Trial Law Course Y, Y-2 (1999). The
questions at the very least implied that R.G.'s story was fabricated, therefore attacking the credibility
of the complaining, and certainly damaging, witness. There would be no other reason to ask such a
question. Becker also argues that the reason for R.G.'s fabrication was his "unconventional" home
life, illustrated by, e.g., two "fathers," with one of whom he did not always get along, and attending
six different schools by the sixth grade. These matters clearly arose earlier than the prior consistent
statement sought to be admitted, thus making 801(3)(1)(B) inapplicable. While clearly this was one
basis on which counsel sought to discredit R.G.'s story, it was not the only basis. Counsel's questions
implied that the story was fabricated. One reason for the alleged fabrication was the many
discussions of the alleged events with law enforcement, family, and others. The hearsay exception
in 801(e)(1)(B) is applicable; the State would be entitled to rebut this implication by introducing
R.G.'s statement to Deputy Lopatowski.

 In Campos v. State, 977 S.W.2d 458, 462 (Tex. App.-Waco 1998, no pet.), the Waco court
held that where defense counsel had questioned A.Y., the victim of the alleged aggravated sexual
assault, regarding prior meetings with prosecutors, promises to do something "fun" after her
testimony, and promises to give her candy, the State was entitled, under Rule 801(e)(1)(B), to
introduce A.Y.'s written statement. The line of questioning utilized by defense counsel implied that
A.Y.'s testimony was influenced.

 In the present case, the trial judge was sufficiently persuaded by Campos to change his ruling,
and we find this authority equally persuasive. As we have noted above, there would be no other
reason for defense counsel to question R.G. about these other meetings except to try to persuade the
trier of fact that these meetings influenced the content of R.G.'s testimony. We find that the trial
judge, therefore, did not abuse his discretion in admitting R.G.'s statement made to Deputy
Lopatowski on the day of the incident in question.

 This issue is overruled.

 The State concedes in its brief that the punishment in this case exceeds that permitted by the
applicable statutes. Becker was indicted for indecency with a child, under Tex. Pen. Code Ann.
§ 21.11, a second-degree felony, enhanced by two prior convictions for indecency with a child. After
conviction at the punishment stage of the proceedings, and in response to Becker's pleading of not
true to the enhancement allegations, the State introduced Exhibits 1A and 1B, the written judgments
of Becker's two prior convictions. The trial judge found the enhancement convictions to be true and
imposed the resulting thirty-year sentence. 

 On their faces, both convictions indicate that the sentences imposed therein were probated
for ten years. The State concedes that probated sentences, without alleging and proving revocation
thereof, are not available for punishment enhancement purposes. Ex parte Langley, 833 S.W.2d 141,
143 (Tex. Crim. App. 1992); Ex parte Murchison, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978). 
The record does not demonstrate a probation revocation in either of the prior convictions. Therefore,
under the applicable law, they are not available for enhancement purposes. Without enhancement,
Becker has been convicted of a second-degree felony. Under Tex. Pen. Code Ann. § 12.33(a)
(Vernon 1994), a second-degree felony is punishable by imprisonment in the Institutional Division
of the Texas Department of Criminal Justice for any term of not more that twenty years or less than
two years. Becker's thirty-year sentence exceeds the maximum permitted by statute. Any sentence in a criminal case not authorized by law is void. Fullbright v. State, 818
S.W.2d 808, 809 (Tex. Crim. App. 1991); Heath v. State, 817 S.W.2d 335, 339 (Tex. Crim. App.
1991) (op. on reh'g). An act of the trial court is void if it is beyond the power of the court, or if it
deprives the affected individual of liberty without due process of law. Ex parte Barlowe, 899
S.W.2d 791, 794 (Tex. App.-Houston [14th Dist.] 1995, no writ). When fundamental error is
present in the record, such error should be raised and corrected by the appellate court on its own
motion. G.A.O. v. State, 854 S.W.2d 710, 713 (Tex. App.-San Antonio 1993, no writ). 
Fundamental error is error that directly and adversely affects the interest of the public generally as
such interest is declared in a statute or the constitution. Id. at 715. It is contrary to the public
interest, as declared in our statutory enactments, to punish an individual in excess of the punishment
which we the people have authorized in our criminal statutes. We therefore find that the trial court
committed fundamental and reversible error in its sentencing of Becker to thirty years, as the statute
does not permit such a sentence.

 When a trial court error relates only to punishment, a defendant is entitled to a new trial on
punishment. Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2002); see Shannon v. State,
708 S.W.2d 850, 851-52 (Tex. Crim. App. 1986). 

 That portion of the judgment of the trial court convicting Becker of indecency with a child
is affirmed; that portion of the judgment of the trial court assessing his punishment at thirty years'
confinement in the Texas Department of Criminal Justice-Institutional Division, is reversed, and this
cause is remanded to the trial court to conduct a new hearing as to punishment only. 






 Ben Z. Grant

 Justice


Date Submitted: February 25, 2002

Date Decided: April 18, 2002


Do Not Publish


1. Because we have ruled this objection to be sufficient, we will not address the question of
whether the "bolstering" objection was sufficient.
2. In its brief, the State cites Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), in
which the court holds that in certain situations, such as rulings of motions to suppress, the appellate
court is to give almost total deference to the trial court's determination of historical fact if supported
by the record. The State argues that the trial court is in the best position to determine the motivation
of defense counsel in his questioning, because it can personally observe counsel's demeanor, and,
therefore, we should defer to the trial court in this regard. This is not a proper application of such
rule; this rule applies only to sworn evidence from the witness stand, not to the behavior of counsel. 
The defense counsel's demeanor in representing his or her client has no legal significance. The
purpose of cross-examination is always to discredit in some manner the testimony elicited on direct.
We reject the contention of the State that Guzman and similar holdings establish our standard of
review in this matter.