Diaz v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 02-04-189-CR

EUFEMIO FRANCISCO DIAZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213th
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Eufemio Francisco Diaz appeals from his conviction for  aggravated robbery with a deadly weapon.  In one issue, 
Diaz contends that the trial court erred by denying his motion to suppress certain statements made to the police.  Specifically, Diaz argues that the trial court should have suppressed his statements because the totality of the circumstances were coercive and rendered his statements involuntary.
  We will affirm.

“A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . .” 
 Tex. Code Crim. Proc. Ann.
 art. 38.21 (Vernon 1979); 
Campos v. State
, 977 S.W.2d 458, 464 (Tex. App.—
Waco 1998, no pet.).
  Whether a defendant's statement is voluntary is determined from the totality of the circumstances surrounding the giving of his statement.  
See Penry v. State
, 903 S.W.2d 715, 748 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 977 (1995); 
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref’d).  A statement is not voluntary if there was “official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  Coercion does not occur without police conduct that is causally related to the confession.  
See Colorado v. Connelly
, 479 U.S. 157, 164, 107 S. Ct. 515, 520 (1986); 
Penry
, 903 S.W.2d at 746 n.27. 

Diaz contends that the facts and circumstances surrounding his statements show that they were coerced.  As support for his assertion, Diaz points out that at the time of the statements, he was handcuffed in the back of a patrol car, soaking wet and shivering.  Further, Diaz asserts that his statements were coerced because Officer David Shinpaugh told him that police needed to know where the guns were because they had officers in the woods and they wanted to make sure no one got hurt.  Diaz argues that this statement could imply that he would be hurt if he did not tell police where the guns were.

Evidence at the pretrial suppression hearing was presented solely through  Grand Prairie Police Officer David Edward Shinpaugh’s testimony.  Officer Shinpaugh testified that he was on patrol when he heard shots fired and that he received a call that shots had been fired in the course of an aggravated robbery.  Officer Shinpaugh testified that a few minutes after hearing the shots, another officer reported observing a car go off into the woods and wreck and that he (Shinpaugh) then went to that location.  Officer Shinpaugh stated that Diaz was located by another police officer at the scene of the wreck, in a creek bed.  He testified that the cold and wet Diaz was taken into custody, handcuffed, and placed in the back of the patrol car with the heater on.  Officer Shinpaugh testified that he read Diaz his 
Miranda
 warnings and that Diaz indicated that he understood and waived those rights.  Officer Shinpaugh testified that he explained to Diaz “what [police] were investigating, and that [police] knew there were guns involved.”  He also testified that he told Diaz that police “had officers in the woods” and that they “needed to know where the guns were [and] how many more people there were.”  Officer Shinpaugh stated that he told Diaz the police did not “want anybody getting hurt,” that they did not “want any officers hurt,” and that they “just needed to resolve the situation.”  Officer Shinpaugh testified that Diaz gave him the street names of two other individuals who were involved and told him that they had used two guns, a 38 snub-nose and 45 semiautomatic pistol, and where the guns were thrown from the car.  Officer Shinpaugh also testified that Diaz told him that there were multiple shots fired at an address on March Lane, that he was one of the shooters, that the car he was driving was stolen, and that one of the co-actors gave a gun to him before they arrived at the scene of the offense.  Officer Shinpaugh testified that Diaz did not ask for an attorney or request to end the interview.  Shinpaugh also testified that he did not make any promises, threats or attempts to intimidate Diaz.  Finally, Officer Shinpaugh testified that using Diaz’s information, the police located two handguns. 

At the conclusion of the pre-trial suppression hearing, the trial court denied Diaz’s motion to suppress his statements, finding that the “statements were freely and voluntarily made under voluntary conditions” and that the statements were “admissible as a matter of fact and law under Article 38.22 subsection 3(c)” of the code of criminal procedure.  The trial court later entered detailed findings of fact and conclusions of law in the case.

Applying the appropriate standard of review,
(footnote: 2) we hold that the trial court did not abuse its discretion in denying Diaz’s motion to suppress because the evidence supports a finding that Diaz’s confession was freely and voluntarily given without coercion.  
See Campos
, 977 S.W.2d at 464.  The record reflects that Diaz was provided with 
Miranda
 warnings.
  The record further reflects that Officer Shinpaugh did not make Diaz any promises, that he did not threaten Diaz, or attempt to intimidate him.  Finally, we find nothing in the record to support Diaz’s contention that Officer Shinpaugh’s statements implied that Diaz would be hurt if he did not talk.  The trial court is the sole finder of fact, and its findings will not be disturbed on appeal if there is any supporting evidence.  
See Carrasco v. State
, 712 S.W.2d 120, 122 (Tex. Crim. App. 1986).  Thus, because there is evidence that Diaz’s statements were voluntary, we hold that the trial court did not abuse its discretion when it denied Diaz’s motion to suppress.  We overrule Diaz’s sole issue and affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 31, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (applying a bifurcated standard of review to a motion to suppress, giving almost total deference to findings of facts and reviewing 
de novo
 conclusions of law)
; Oles v. State
, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999) (stating a motion to suppress is reviewed 
de novo
 when reviewing a question of law based on undisputed facts); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)
 
(explaining that reviewing courts should afford almost total deference to rulings on application of law to fact questions, or mixed questions of law and fact, when their resolution turns on an evaluation of credibility and demeanor, but may review 
de novo
 mixed questions of law and fact not falling within this category)
.