

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00157-CR

**GENARO GARCIA,**

                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                            **Appellee**

---

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 08-04560-CRF-272**

---

## MEMORANDUM OPINION

---

Appellant Genaro Garcia was charged by indictment with one count of aggravated sexual assault of a child under fourteen years of age, a first-degree felony, and two counts of indecency with a child by contact, a second-degree felony. After a jury trial, Garcia was sentenced to seventy years' confinement on Count 1 and twenty years' confinement for Counts 2 and 3, to be served concurrently. In two issues, Garcia argues that: (1) the trial court erred in denying his motion to suppress to his confession; and (2) his trial counsel was ineffective. We will affirm.

Garcia's first issue argues that the trial court erred in refusing to suppress his confession. Specifically, Garcia asserts that he, "a non[-]English speaking[,] insulin dependent[,] diabetic[,] illiterate man who had been drinking prior to his confession, did not believe he was free to leave [the police station] without confessing." Because he subjectively believed that he was not free to leave the police station, Garcia contends that his confession should have been suppressed. The State counters that the trial court did not err because Garcia was not in custody at the time he confessed.

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in the light most favorable to the trial court's ruling, *see Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007), and we review the trial court's ruling under a bifurcated standard of review, giving almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on the evaluation of credibility and demeanor, and (2) application-of-the-law-to-fact questions that turn on the evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). However, when application-of-law-to-the-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Id.* Furthermore, we review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

Oral confessions of guilt or oral admissions against interest made by a suspect

who is in custody are not admissible unless made in compliance with the provisions of article 38.22 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005); *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex. Crim. App. 1985); *see also Narramore v. State*, No. 06-05-00226-CR, 2007 WL 817302, at *4 (Tex. App.—Texarkana Mar. 20, 2007, pet. ref'd) (mem. op., not designated for publication). However, if a person makes an oral confession of guilt or an oral admission against interest while not in custody, a different rule applies. *See Shiflet*, 732 S.W.2d at 623; *see also Narramore*, 2007 WL 817302, at *4. Article 38.22, section 5 provides that: "Nothing in this article precludes the admission of a statement made by the accused . . . that does not stem from custodial interrogation . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5. Thus, an oral confession of guilt or an oral admission against interest that does not stem from custodial interrogation, and is given freely, voluntarily, and without compulsion or persuasion, is admissible evidence against the accused. *See Shiflet*, 732 S.W.2d at 623; *see also Narramore*, 2007 WL 817302, at *4. Thus, the crux of this issue is whether Garcia was in custody when he confessed to the charged offenses.

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree that he was not at liberty to leave. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 323-25, 114 S.Ct. 1526, 1529-

30, 128 L.Ed.2d 293 (1994)); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The determination of "custody" must be made on an ad hoc basis, after considering all of the objective circumstances. *Herrera*, 241 S.W.3d at 526.[1]

At least four general situations may constitute "custody": (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). In all four circumstances, the initial determination of "custody" depends on the objective circumstances of the interrogation, not on the subjective views of the interrogating officer or the person being questioned. *Dowthitt*, 931 S.W.2d at 255. The subjective intent of law enforcement officers to arrest is irrelevant, unless that intent is somehow communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 323-25, 114 S.Ct. at 1529-30; *Herrera*, 241 S.W.3d at 525-26.

A person is not in "custody" if he "voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime." *Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.— Houston [14th Dist.] 2008, pet. ref'd) (citing *Dancy v. State*, 728 S.W.2d 772, 778-79 (Tex.

---

[1] In *Herrera*, the court concluded that the construction of "custody" with respect to article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera*, 241 S.W.3d at 526.

Crim. App. 1987)). "Once the circumstances show the person is acting upon the invitation, urging[,] or request of police officers, and not the result of force, coercion[,] or threat, the act is voluntary and the person is not then in custody." *Id.* (citing *Livingston v. State*, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987). However, an initial consensual encounter with police can be transformed into a custodial detention where the police procedures become qualitatively and quantitatively so intrusive with respect to a person's freedom of movement. *See Kaupp v. Texas*, 538 U.S. 626, 630, 123 S.Ct. 1843, 1847, 155 L.Ed.2d 814 (2003).

A trial judge's ultimate "custody" determination "presents a 'mixed question of law and fact.'" *Herrera*, 241 S.W.3d at 526 (citing *Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S.Ct. 457, 465-66, 133 L.Ed.2d 383 (1995)). Therefore, we afford almost total deference to a trial judge's "custody" determination when the questions of historical fact turn on credibility and demeanor; otherwise, we review the trial judge's "custody" determination de novo. *Id.* Furthermore, when a trial judge denies a motion to suppress and does not enter findings of fact, as is the case here, the evidence is viewed "in the light most favorable to the trial court's ruling," and we "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.*

In the instant case, Garcia first interacted with law enforcement on August 1, 2008, when his house was searched pursuant to a warrant. At that time, Garcia agreed to come to the police station to make a statement regarding his involvement in this matter. Kelley Caldwell, a Bryan police officer, testified that Garcia arrived at the police

station at 9:30 a.m. on August 8, 2008, to make his statement. Garcia was first interviewed by Sabino Martinez Jr., who was then a sergeant with the Texas Department of Public Safety and a polygraph expert. This initial interview was regarded as a pre-polygraph examination interview. During this interview, Sergeant Martinez spoke to Garcia in Spanish, and Sergeant Martinez began the interview by reading Garcia his *Miranda* rights. Sergeant Martinez noted that before he interviews anyone, he reads them their *Miranda* rights, even if the individual is not in custody or under arrest. Sergeant Martinez testified that Garcia appeared to understand his rights and that he agreed to continue the interview. Shortly into the interview, Garcia discussed some of the facts involved in this case, and Sergeant Martinez asked Officer Caldwell to join the interview. Once Officer Caldwell entered the room, she began recording the interview, and Sergeant Martinez read Garcia his *Miranda* rights once again. Garcia again waived his rights and agreed to make a statement.

After waiving his rights, Garcia admitted that he voluntarily came to the police station to make a statement and that no one had forced, coerced, or made promises to him in exchange for any statements made to police. Garcia then admitted being involved in the charged offenses, but he blamed K.M., the seven-year-old child victim in this case. Garcia told Sergeant Martinez and Officer Caldwell the following:

> Basically that he had—that some of the information about the sexual abuse was true, but that the child was the one that wanted him to touch him [sic]. The child—I'm sorry, the child was the one that wanted him to touch her, and pretty much was blaming the child throughout the whole interview.

Garcia spoke to Sergeant Martinez and Officer Caldwell for approximately thirty

minutes until he ended the interview by saying "That is all I have to say." Garcia then left the police station on his own accord. Sergeant Martinez did not administer the polygraph test because Garcia confessed to the crimes charged.

During the interview, both Sergeant Martinez and Officer Caldwell wore civilian clothes, and both denied that Garcia was in custody or formally arrested at the time he made his confession. Garcia was never handcuffed, deprived of water or restroom breaks, or deprived of his right to counsel. Sergeant Martinez explained to Garcia that he could terminate the interview at any time. On cross-examination, Sergeant Martinez acknowledged that Garcia told him that he had surgery about a month before the interview, and Garcia did tell him that he had high blood pressure and had consumed "seven to eight beers" the night before the interview. Sergeant Martinez testified that these factors could have affected the polygraph examination, but a preliminary examination to determine what effect, if any, these factors would have had on the polygraph examination was never conducted because Garcia confessed. With regard to Garcia's purported medical issues, Officer Caldwell recalled Garcia merely stating that "he was diabetic and couldn't get an erection." Officer Caldwell testified that Garcia did not appear to be ill on the day he gave his confession. Furthermore, Sergeant Martinez denied that Garcia was promised anything in exchange for his confession.

Garcia also testified at the hearing on his motion to suppress. His wife took him to the police station on August 8, 2008 to make a statement, and he said that Sergeant Martinez did not read him any warnings before starting the interview. Garcia told Sergeant Martinez that he was not feeling well. He testified that Sergeant Martinez read

Garcia his *Miranda* rights only after discussing the facts of the case and that Sergeant Martinez raised his voice at him during the interview. Garcia said that he is diabetic; that he had not eaten anything on the morning of the interview; and that he had consumed beer the night before the interview. Regarding his confession, Garcia testified that he made the statements only because Sergeant Martinez told him that he could leave the police station if he confessed; he only told Sergeant Martinez and Officer Caldwell what they wanted to hear so that he could leave.

At the hearing, Garcia recanted his confession and denied all of the allegations against him. He also testified that he was nervous talking to police at first, but he later admitted that he was not scared of Sergeant Martinez and Officer Caldwell. On cross-examination, Garcia admitted that Sergeant Martinez told him that he could stop the interview at any time and that he could leave. Garcia also admitted that neither Sergeant Martinez nor Officer Caldwell promised him anything; that he was voluntarily present at the police station; and that Sergeant Martinez had informed him of his *Miranda* rights.

The evidence does not support a finding that Garcia was in custody at the time he made his confession. Garcia voluntarily came to the police station to make a statement, and he was never restrained, handcuffed, or formally arrested. Garcia was not deprived of water, restroom breaks, or the right to counsel. Garcia was informed that he was free to terminate the interview at any time, and Garcia did, in fact, terminate the interview by stating, "That is all I have to say." He then left the police station on his own accord, further demonstrating that he was free to leave at any time.

Given this evidence, we conclude that, in viewing the evidence in the light most favorable to the trial court's ruling, Garcia was free to leave at any time during the interview; thus, he was not in police custody at the time he confessed. *See Herrera*, 241 S.W.3d at 526; *see also Turner*, 252 S.W.3d at 580.

Nevertheless, Garcia argues that Sergeant Martinez promised him he could leave only if he confessed and that he did not understand his rights because of his medical issues and his illiteracy.[2] But both Sergeant Martinez and Officer Caldwell testified that Garcia appeared to understand his rights and that he did not appear to be ill when he confessed. In denying Garcia's motion to suppress, the trial court obviously accepted their testimony and rejected Garcia's testimony. The trial court is the sole judge of the credibility of the witnesses and the weight to be accorded to their testimony. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Campos v. State*, 977 S.W.2d 458, 465 (Tex. App.—Waco 1998, no pet.). The trial court may believe or disbelieve any or all of the testimony, including that of the accused. *See Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Campos*, 977 S.W.2d at 465. We will not disturb the trial court's ruling absent a clear abuse of discretion. *Campos*, 977 S.W.2d at 465. Considering all of the evidence regarding the circumstances surrounding the taking of Garcia's statement, including the fact that Garcia was not in police custody at the time he confessed, we find that the trial court's denial of Garcia's motion to suppress was not an abuse of discretion. Accordingly, we overrule Garcia's first issue.

---

[2] The record indicates that Garcia was informed of his *Miranda* rights on at least two occasions during the interview and that he signed waivers of those rights each time.

In his second issue, Garcia asserts that his trial counsel was ineffective. Garcia contends that "there are several deficiencies when considered in their totality amount to ineffective assistance of counsel." In particular, Garcia alleges that trial counsel was ineffective because: (1) he allowed a potential juror to exit the courtroom without objecting and allowed voir dire to continue without any mention of whether the potential juror had returned; (2) he failed to challenge for cause or exercise a peremptory challenge against a juror whose college roommate had been the victim of sexual assault; (3) he failed to make an opening statement; (4) he failed to object to bolstering evidence the State allegedly presented to explain why a child might lie or cover up sexual abuse; (5) he failed to object to the admission of an expert report that allegedly contained hearsay; (6) he failed to secure the testimony of Jane Riley, the pediatric nurse who conducted the sexual assault examination of K.M.; (7) he violated the State's motion in limine by referring to Garcia's immigration status; and (8) he failed to cross-examine K.M.

The United States Constitution, the Texas Constitution, and article 1.051 of the Code of Criminal Procedure guarantee an accused the right to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp. 2010); *see also Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, Garcia must show that: (1) trial counsel's representation fell below an objective standard of reasonableness, based on the prevailing professional norms; and (2) there is a

reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-95, 104 S.Ct. at 2064-69; *Dewberry v. State*, 4 S.W.3d 735, 737 (Tex. Crim. App. 1999). Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Garcia has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Garcia overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts and omissions that form the basis of Garcia's claims of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814. A silent record that provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Id.* at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007).

Here, Garcia did not raise the issue of ineffective assistance of counsel in his

motions for new trial. Thus, his trial counsel was not afforded an opportunity to explain his trial strategy or address the numerous complaints Garcia makes on appeal. In situations where trial counsel has not been afforded an opportunity to explain his actions, an appellate court will usually reject the complaint in a summary fashion. *See Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); *Hervey v. State*, 131 S.W.3d 561, 564 (Tex. App.—Waco 2004, no pet.) ("[T]rial counsel should ordinarily be afforded an opportunity to explain the actions taken or not taken, as the case may be, before being condemned as unprofessional and incompetent."). Because the record is silent as to trial counsel's trial strategy and because Garcia has not adequately explained how trial counsel's actions were so outrageous that no competent attorney would have engaged in them, we cannot say that the record supports a finding that trial counsel was ineffective. *See Roberts*, 220 S.W.3d at 533. We overrule Garcia's second issue.

Having overruled Garcia's two issues, we affirm the judgment of the trial court.

REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed August 3, 2011
[CRPM]