**Jeffrey Dean GERRON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–00–066–CR.**

Court of Appeals of Texas,
Waco.

Aug. 20, 2003.

W. Lee Johnson, Ennis, for appellant.

Joe F. Grubbs, Ellis County District Attorney, Cynthia W. Hellstern, Ellis County Asst. District Attorney, Waxaha-chie, Matthew Paul, State Prosecuting Attorney, Austin, for appellee.

Before Justice VANCE, and Justice GRAY.

## MEMORANDUM OPINION

BILL VANCE, Justice.

A jury found Jeffrey Dean Gerron guilty of misdemeanor driving while intoxicated ("DWI") and assessed his punishment at ninety days in jail and a $1,000 fine. The court placed Gerron on two years' community supervision. We initially reversed the conviction because the trial court did not instruct the jury under article 38.23(a) concerning whether the officer who stopped Gerron was outside his geographical jurisdiction, thus making the stop illegal and the evidence obtained therefrom inadmissible. *Gerron v. State,* 57 S.W.3d 568 (Tex. App.-Waco 2001); TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003). The Court of Criminal Appeals reversed our decision, finding that the only jury-charge request regarding article 38.23(a) Gerron made at trial and complained about on appeal was whether Gerron failed to maintain a single lane of traffic, and therefore we disposed of the case on an issue not complained of at trial or on appeal. *Gerron v. State,* 97 S.W.3d 597 (Tex.Crim. App.2003). The Court remanded the cause so that we may consider Gerron's other issues. We notified the parties of the remand and afforded them an opportunity to submit additional briefing, and neither party did so. *See Bell v. State,* 956 S.W.2d 560 (Tex.Crim.App.1997).

## BACKGROUND

At 2:30 in the morning, Officer Phillip Shelton of the City of Palmer Police Department heard some CB chatter about a vehicle on Interstate 45. Evidence of the

substance of the chatter was excluded by the court. Shelton spotted the vehicle just inside the Palmer city limits on Interstate 45 and began following it. Gerron was driving the vehicle.

Shelton followed Gerron for over a mile outside the Palmer city limits to evaluate Gerron's driving. Shelton testified he observed the vehicle "weave" from lane to lane and cross onto the shoulder and back. However, the weaving was described on cross-examination as Gerron safely changing lanes from time to time. It was also windy that night, which Shelton admitted may have contributed to Gerron's "weaving."

Outside Palmer, Gerron exited the highway and, passing by a stop sign, stopped in the middle of the intersection. Shelton activated his lights, but Gerron turned at the intersection and continued driving. After following the vehicle for about 200 yards, Shelton activated his siren. Gerron did not stop for another mile and a half. The entire sequence of events beginning in Palmer and ending with the stop took about five minutes.

At the vehicle, Shelton detected a strong odor of an alcoholic beverage on Gerron and noticed he was swaying in his seat and had trouble opening the window. Gerron admitted he had consumed a couple of drinks. Shelton had Gerron get out of the vehicle so Shelton could administer field-sobriety tests. Gerron stumbled as he walked. Shelton testified that he administered three field-sobriety tests, which Gerron failed. Based on Gerron's driving, the results of the field tests, and his observations, Shelton concluded that Gerron was intoxicated. Shelton arrested Gerron and took him to the Ellis County jail. He read Gerron the required statutory warnings before requesting a breath test to determine blood-alcohol level, but Gerron refused the test. No videotape was taken at

the jail because no one could find a key to the room where the video machine was located.

Gerron pled not guilty and, after a jury trial, was convicted. On appeal, he complains that: (1) the evidence is factually insufficient to support his conviction; (2) Shelton's testimony about the horizontal-gaze-nystagmus ("HGN") test should not have been admitted; (3) the jury should have been instructed to find whether the stop of his vehicle was legal; and (4) his counsel was not allowed to make an opening statement at the close of the State's case.

Finding no error, we will affirm the judgment.

## FACTUAL SUFFICIENCY

In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). We must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex.Crim.App.2001).

We must also remain cognizant of the factfinder's role and unique position-one that the reviewing court is unable to occupy. *Johnson,* 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may "believe all, some, or none

of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman*, 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

The state's burden was to prove that Gerron was operating his vehicle in a public place while intoxicated. TEX. PEN.CODE ANN. § 49.04 (Vernon 2003). "Intoxicated," as charged here, means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. *Id.* § 49.01 (Vernon 2003).

It is uncontested that Gerron operated his vehicle in a public place. Shelton and Gerron both testified that Gerron was driving his Ford Explorer on Interstate 45 in Palmer. Gerron exited the Interstate and continued driving on FM 879. Shelton stopped him on Garret Avenue.

As for whether Gerron was intoxicated while he was driving, Shelton testified to the following.

- Gerron was "weaving" in and out of marked lanes and drove on the shoulder when he exited the interstate. On cross examination, however, Shelton stated that Gerron was changing lanes safely and did not create a hazard to himself or others. Also, it was windy.
- Gerron drove past a stop sign and stopped in the intersection.
- Gerron did not immediately pull over when Shelton activated his lights.
- Gerron did not immediately pull over when Shelton activated his siren.
- Shelton smelled alcohol on Gerron.
- Gerron swayed in his seat and had trouble opening the window.
- Gerron stumbled as he walked.
- Shelton administered the walk-and-turn, one-leg stand, and HGN field-sobriety tests. Gerron failed these tests.
- Gerron refused to give a breath sample.

Gerron testified to the following.

- His Ford Explorer was misaligned and had been pulling to the right, but he presented no other evidence of misalignment. He said that the wind may have influenced his driving.
- He changed lanes on Interstate 45 in order to take his exit.
- He had to stop past the stop sign to see the oncoming traffic. He did not immediately pull over when he saw Shelton's lights because of a ditch beside the road.
- He did not trust Shelton because the stop was outside Shelton's jurisdiction, and therefore refused to give a breath sample.

Although there is conflicting testimony, it is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman*, 66 S.W.3d at 287. Accordingly, we find the evidence is not "so obviously weak as to undermine confidence in the jury's determination." *Johnson*, 23 S.W.3d at 11. Nor do we find that "the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.* Because the evidence is factually sufficient to support the jury's finding, we overrule this issue.

## EXPERT TESTIMONY

■ Shelton testified about the HGN test and described its purpose and use. Thus, he was testifying as an expert. Rule of Evidence 702 states: "If scientific, tech-

nical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form an opinion or otherwise." TEX.R. EVID. 702; *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim.App.2002); *Campos v. State*, 977 S.W.2d 458, 462 (Tex.App.-Waco 1998, no pet.). The court has discretion in making these determinations, and its ruling will not be overturned on appeal absent an abuse of that discretion. *Sexton*, 93 S.W.3d at 99; *Campos*, 977 S.W.2d at 464.

The issue here is whether Shelton was qualified to testify about the HGN test. For his testimony to be admissible, the testifying officer must qualify as an expert regarding the HGN test's administration and technique, *i.e.*, that the officer has received "practitioner certification" by the State of Texas. *Emerson v. State*, 880 S.W.2d 759, 769 (Tex.Crim.App.1994).

Shelton completed a training course, including training on the HGN test, through Texas A & M University in conjunction with the National Highway Traffic Safety Administration ("NHTSA"). Additionally, he received his state "practitioner certification" through the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") after completing the required twenty-four hours of classroom instruction. Shelton testified that, although he had completed the classroom work, he lacked sixteen hours of field work required to qualify for his "proficiency certification" from the state. A literal reading of *Emerson* requires only the "practitioner certification"—and not the "proficiency certification"—to qualify as an expert on the administration and technique of the HGN test. *Id.*

Because Shelton received HGN certification through Texas A & M University in conjunction with the NHTSA and received his state practitioner certificate through TCLEOSE, we find that the court did not err in admitting Shelton's testimony regarding the HGN test. We overrule this issue.

## JURY INSTRUCTION

Gerron next complains about the court's denial of a special jury instruction. Gerron requested the following:

You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop or detention shall be admissible in evidence against such accused. An officer is permitted, however, to make a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense. Now, bearing in mind these instructions, if you find from the evidence that on the occasion in question the defendant, Jeffrey Gerron, was not Failing To Maintain a Single Lane of Traffic immediately preceding his stop and detention by the officer involved herein, or you have a reasonable doubt thereof, then such stopping of the accused would be illegal, and if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stop and detention of the defendant and his conclusions drawn as a result thereof and you will not consider such evidence obtained after the stop for any purpose whatsoever.

The Court of Criminal Appeals has addressed article 38.23(a) of the Code of Criminal Procedure:

Generally, when evidence from any source raises a defensive issue and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim. App.1993) (citing *Moore v. State,* 574 S.W.2d 122, 124 (Tex.Crim.App.1978)). The trial court must instruct the jury to disregard illegally obtained evidence if the defendant raises a fact issue concerning the manner in which the evidence was obtained and requests the instruction. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim.App.1986). The evidence which raises the issue may be strong, weak, contradicted, unimpeached, or unbelievable. *Muniz,* 851 S.W.2d at 254 (citing *Sanders v. State,* 707 S.W.2d 78,80 (Tex.Crim.App.1986)). Further, art. 38.23(a) provides that in any case where a party raises an issue regarding whether evidence was obtained in violation of the law of Texas or the United States, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained because of such a violation, then the jury shall disregard any such evidence. Tex.Code Crim. Proc. Ann. [art.] 38.23(a) (2001); *see also, Miniel v. State,* 831 S.W.2d 310, 316 (Tex.Crim. App.1992).

*Mendoza v. State,* 88 S.W.3d 236, 239 (Tex. Crim.App.2002).

At trial and on appeal, Gerron complained about the trial court's denial of the jury instruction, which referred only to his weaving. But Shelton testified that he observed Gerron commit several traffic infractions including (1) weaving from lane to lane, (2) driving on the improved shoulder, and (3) stopping past the stop sign in the middle of the intersection. The court noted that the stop was legal based on the latter two traffic violations. Therefore, the court denied the requested jury instruction. We agree with this conclusion. Shelton had probable cause to stop Gerron for the latter two traffic violations. No special jury-charge instruction was requested regarding them. Therefore, the trial court did not err in refusing Gerron's requested instruction.

We overrule this issue.

## OPENING STATEMENT

■ Finally, Gerron argues that the trial court improperly denied him an opening statement. After the prosecution's opening statement, Gerron reserved his opening statement until the end of the State's evidence. A short recess was taken after the State rested. Outside the presence of the jury, the court asked if Gerron was ready to proceed and he answered affirmatively. With the jury present, the court asked if Gerron "wished to call any witnesses or put on any evidence at that time." Gerron then took the witness stand. After cross examination, Gerron moved for a mistrial because the court had not reminded him to make his opening statement. The court denied the motion and gave Gerron an opportunity to give an opening statement at that time. He declined.

We find no authority that the trial court has a duty to remind counsel to give an opening statement. Furthermore, the court did not deny Gerron the opportunity to make an opening statement. *E.g., Dunn v. State* 819 S.W.2d 510 (Tex.Crim. App.1991) (Following the prosecution's opening statement, the defendant asked if he could make a brief statement and the court told him that he would have to wait until the State rested.). Moreover, to preserve a complaint, the trial court must make an adverse ruling on a timely objection. Tex.R.App. P. 33.1. Gerron's objection was not timely.

We overrule this issue.

## CONCLUSION

Having overruled each of Gerron's issues, we affirm the judgment.