# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-16-00017-CR

**Aaron Trevino, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2013CR0886, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Aaron Trevino of the misdemeanor offense of driving while intoxicated.[1] The trial court rendered judgment on the verdict, assessed punishment at 90 days in jail, and suspended imposition of the sentence, placing Trevino on community supervision for a period of nine months. In four issues on appeal, Trevino asserts that the evidence is insufficient to support his conviction, that the trial court erred in failing to instruct the jury to disregard any illegally obtained evidence, and that the trial court abused its discretion in admitting expert testimony. We will affirm the judgment of conviction.

---

[1] *See* Tex. Penal Code § 49.04(a).

## BACKGROUND

The jury heard evidence that at approximately 3:30 a.m. on May 12, 2013, Deputy Ryan Carpenter of the Comal County Sheriff's Office initiated a traffic stop on a vehicle that he had observed "traveling very slowly" on Highway 281 southbound near Spring Branch. Deputy Carpenter testified that the posted speed limit on that portion of the roadway was 65 miles per hour and that when he activated his radar, the vehicle "was going 28 miles per hour." When asked why this "seemed suspicious" to him, Carpenter explained, "[A]t that particular time [of] night, 3:30 in the morning, it was a Sunday morning, I find somebody driving that slow, of course, it raises my suspicion. I want to check them out, make sure there's not other problems going on such as medical or falling asleep or obviously investigate the case if they are intoxicated." Carpenter added that the possibility that the driver of the vehicle might be intoxicated "was something that was in the back of my mind." As Carpenter proceeded to follow the vehicle, he "observed it weaving in the lane" and "cross[ing] the [dotted white] line" separating the right and left lanes of traffic "a few times." Carpenter testified that the vehicle eventually exited Highway 281 and made a right turn onto Highway 46, at which point the vehicle "just proceeded out into the intersection" and made a left turn into a gas station by "driving left of center across the double yellow lines." At that point, Carpenter recounted, he "activated my emergency lights and issued a traffic stop" in the parking lot of the gas station.

Carpenter further testified that, upon making contact with the driver of the vehicle, later identified as Trevino, he "noticed a very strong odor of alcoholic beverage . . . coming from inside the vehicle itself" and noticed that Trevino's "eyes appeared to be glossed over" and that

2

Trevino spoke with "a mild slur." Carpenter recounted that when he asked Trevino from where he was coming, Trevino told him that he had been driving on North Loop 1604, which was located in San Antonio, and that he was "trying to get home" to an address also located in San Antonio but that "he was lost." Carpenter testified that he found this to be suspicious because Trevino had told him that he had lived in San Antonio "all his life." Carpenter also asked Trevino if he had been drinking. According to Carpenter, Trevino "told me he had two beers" between the hours of 10:00 p.m. and 12:00 a.m. Carpenter testified that he had reason to doubt that Trevino had consumed only two beers that night "based on the strong odor that I smelled during my interview." Carpenter also recounted that Trevino seemed unaware of the slow speed at which he had been driving and the time of night at which he had been stopped, believing it to be approximately 2:00 a.m. when it was instead approximately 3:30 a.m.

Carpenter proceeded to conduct field sobriety tests on Trevino. Carpenter testified that he observed Trevino exhibit six out of six "clues" indicating intoxication on the horizontal-gaze-nystagmus (HGN) test, four out of eight clues on the walk-and-turn test, and one out of four clues on the one-leg-stand test. Carpenter subsequently arrested Trevino for driving while intoxicated and obtained a search warrant to draw Trevino's blood. According to the evidence presented, Trevino's blood-alcohol concentration was .097 grams of alcohol per milliliter of blood, above the legal limit of .08.

Based on the above and other evidence, which we discuss in more detail below, the jury found Trevino guilty of driving while intoxicated.[2] The trial court rendered judgment on the verdict and placed Trevino on community supervision for nine months as noted above. This appeal followed.

## ANALYSIS

**Evidentiary sufficiency**

In his first and second issues, Trevino asserts that the evidence is insufficient to prove that he committed the offense of driving while intoxicated. Specifically, in his first issue, he claims that Deputy Carpenter lacked probable cause or reasonable suspicion to initiate a traffic stop on Trevino's vehicle. In his second issue, Trevino asserts that Carpenter did not have probable cause to arrest Trevino for driving while intoxicated.

We initially observe that Trevino's arguments conflate the concepts of evidentiary sufficiency and admissibility. Evidence obtained as a result of a traffic stop that was not supported by reasonable suspicion or an arrest that was not supported by probable cause would be inadmissible.[3] But "sufficiency and admissibility are distinct issues."[4] ""Sufficiency" relates to whether the elements of an offense have been logically established by all the evidence presented,

---

[2] We note that this was Trevino's third trial for this offense. The previous two had resulted in mistrials.

[3] *See* U.S. Const. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

[4] *Hanks v. State*, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004).

4

both admissible and inadmissible.'"[5] Accordingly, "[w]e review the evidence only as the sufficiency of the State's proof as to elements of the offense, not as to the legality of the seizure."[6]

When reviewing the sufficiency of the evidence supporting a conviction, "the standard of review we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[7] "This standard tasks the factfinder with resolving conflicts in the testimony,

---

[5] *Id*. (quoting *Caddell v. State*, 123 S.W.3d 722 (Tex. App.—Houston [14th Dist] 2003, pet. ref'd)).

[6] *Goodwin v. State*, 416 S.W.3d 90, 94 (Tex. App.—Beaumont 2013, no pet.) (citing *Hanks*, 137 S.W.3d at 671-72); *see Caddell*, 123 S.W.3d at 726; *see also Sosa v. State*, No. 03-13-00764-CR, 2015 Tex. App. LEXIS 8649, at *8-10 (Tex. App.—Austin Aug. 18, 2015, pet. ref'd) (mem. op., not designated for publication) (collecting cases).

We note that, although the trial court's docket sheet indicates that the trial court ruled on the admissibility of the evidence prior to trial when it denied Trevino's motion to suppress, Trevino does not challenge the trial court's suppression ruling on appeal. Moreover, no record of any hearing on the motion to suppress has been included in the reporter's record. Thus, to the extent that Trevino's sufficiency arguments could be construed as challenging the trial court's ruling on the motion to suppress, we are unable to review the merits of that ruling. *See Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007) (observing that although it is "the State's burden to establish, in the trial court, the existence of" reasonable suspicion and probable cause, it is "appellant's burden to bring forward a record on appeal sufficient to show that the trial court erred in [its] ruling on the motion to suppress"); *Guajardo v. State*, 109 S.W.3d 456, 462 & n.17 (Tex. Crim. App. 2003) (noting that it is "the appealing party's burden to ensure that the record on appeal is sufficient to resolve the issue he presents"); *see also Mitchell v. State*, No. 06-11-00015-CR, 2011 Tex. App. LEXIS 9222, at *1-2 (Tex. App.—Texarkana Nov. 22, 2011, no pet.) (mem. op., not designated for publication) ("Without that record [of the suppression hearing], we may not review the merits of [appellant's] claim that the trial court failed to suppress the evidence."); *Sarringar v. State*, Nos. 02-02-00288-CR & 02-02-00289-CR, 2003 Tex. App. LEXIS 5205, at *7 (Tex. App.—Fort Worth June 19, 2003, pet. ref'd) (mem. op., not designated for publication) ("Because there is no record of the hearing on the motion to suppress in this case, there is nothing for this court to review, preventing us from determining whether the trial court abused its discretion.").

[7] *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

5

weighing the evidence, and drawing reasonable inferences from basic facts."[8] "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them."[9] "On appeal, reviewing courts 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'"[10] "Thus, '[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence' because that approach does not consider the cumulative force of all the evidence."[11] "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."[12] Moreover, "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly admitted."[13] Finally, "the same standard of review is used for both circumstantial and direct evidence cases."[14] "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient" to support a conviction.[15]

---

[8] *Id.*

[9] *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

[10] *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

[11] *Id.* (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)).

[12] *Id.* at 448-49 (citing *Hooper*, 214 S.W.3d at 12).

[13] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Clayton*, 235 S.W.3d at 778).

[14] *Id.* (citing *Hooper*, 214 S.W.3d at 13).

[15] *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

The elements of the offense of driving while intoxicated are that the defendant was (1) operating a motor vehicle; (2) in a public place; (3) while intoxicated.[16] "Intoxicated" is defined in the Penal Code as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or having an alcohol concentration of 0.08 or more."[17] In this case, the jury was instructed that it could find Trevino guilty under either definition of intoxication.

The evidence supporting the jury's finding that Trevino had been driving while intoxicated included the following: (1) Carpenter observed Trevino driving 28 miles per hour on Highway 281 when the posted speed limit was 65 miles per hour; (2) Carpenter observed Trevino's vehicle "weaving in the lane" and "cross[ing] the [dotted white] line" separating the right and left lanes of traffic on more than one occasion; (3) a video recording of the traffic stop, taken from Carpenter's patrol-car dash camera, corroborated Carpenter's account of Trevino's erratic driving; (4) upon making contact with Trevino, Carpenter "noticed a very strong odor of alcoholic beverage . . . coming from inside the vehicle itself"; (5) Carpenter also noticed that Trevino's "eyes appeared to be glossed over" and that Trevino spoke with what he described as "a mild slur"; (6) Trevino admitted to Carpenter that he had been drinking earlier that night; (7) Trevino told Carpenter that he was "lost" on his way home to San Antonio, despite claiming to have lived in San Antonio "all his life"; (8) Trevino seemed to be unaware of the speed at which he had been driving or the time

[16] *See* Tex. Penal Code § 49.04(a).

[17] *Id*. § 49.01(2).

at which he had been stopped; (9) according to Carpenter, Trevino exhibited six out of six "clues" indicating intoxication on the horizontal-gaze-nystagmus (HGN) test, four out of eight clues on the walk-and-turn test, and one out of four clues on the one-leg-stand test; and (10) according to blood-test results, Trevino's blood-alcohol level exceeded the legal limit.  The combined and cumulative force of this and other evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, supports the jury's finding that Trevino had lost "the normal use of mental or physical faculties by reason of the introduction of alcohol into [his] body."[18]

In arguing that the evidence was insufficient to prove intoxication, Trevino focuses on certain testimony by Carpenter in which he acknowledged that there were possible explanations other than intoxication for Trevino's driving behavior.  Trevino further claims that some of Trevino's actions after being stopped, such as his willingness to cooperate with Carpenter and answer his questions, were inconsistent with the State's theory that Trevino was intoxicated and that Trevino did not display the requisite number of "clues" on the one-leg-stand test to indicate that he was intoxicated.  Trevino also points to evidence in the record tending to show that Carpenter might not have conducted the field sobriety tests in accordance with the guidelines of the National Highway Traffic Safety Administration (NHTSA).  Although this and other evidence could have supported a contrary inference that Trevino was not intoxicated, the governing standard of review requires us to presume that the jury resolved evidentiary conflicts in favor of the verdict and defer to that

---

[18] *See id*. § 49.01(2).

8

determination.[19]  Accordingly, on this record, we conclude that the evidence is sufficient to support Trevino's conviction for the offense of driving while intoxicated.[20]

We overrule Trevino's first and second issues.

**Article 38.23 instruction**

Article 38.23 of the Code of Criminal Procedure provides that no illegally obtained evidence "shall be admitted in evidence against the accused on the trial of any criminal case" and that, "[i]n any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."[21]  In his third issue, Trevino asserts that the trial court erred in failing to include an Article 38.23 instruction in the jury charge.

"To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the

---

[19]  *See Clayton*, 235 S.W.3d at 778.

[20]  *See Murray*, 457 S.W.3d at 449; *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979); *Zill v. State*, 355 S.W.3d 778, 785-88 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Kimball v. State*, 24 S.W.3d 555, 560 (Tex. App.—Waco 2000, no pet.); *see also Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (collecting cases discussing evidence of intoxication); *Dorsche v. State*, 514 S.W.2d 755, 756-57 (Tex. Crim. App. 1974) (deferring to jury's resolution of conflicting evidence on intoxication).

[21]  Tex. Code Crim. Proc. art. 38.23(a).

9

challenged conduct."[22] "There must be a genuine dispute about a material fact."[23] "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law."[24] "And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence."[25] "The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." Moreover, to raise a disputed fact issue, "there must be some affirmative evidence that puts the existence of that fact into question."[26] "In this context, a cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might."[27] "'Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury.'"[28]

In this case, Trevino asserts that there were contested fact issues as to both the lawfulness of the initial traffic stop and his subsequent arrest for driving while intoxicated. Specifically, he claims that there were factual disputes as to whether Carpenter had properly

---

[22] *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (citing *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008)).

[23] *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (citing *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)).

[24] *Id*.

[25] *Id*.

[26] *Id*. at 513.

[27] *Id*.

[28] *Id*. at 510 (quoting *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)).

10

calibrated his radar gun so as to determine the precise speed at which Trevino had been driving, whether Trevino had committed a traffic violation prior to the stop, and whether Carpenter had properly conducted the field sobriety tests. Trevino also points to discrepancies between Carpenter's testimony during this trial and the two prior mistrials.[29]

On this record, we cannot conclude that the above facts, to the extent that they might have been "affirmatively contested," were "essential" in deciding the lawfulness of either the traffic stop or the arrest. "An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law."[30] "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."[31] "A reasonable-suspicion determination is made by considering the totality of the circumstances."[32] Similarly, a warrantless arrest is lawful if, based on the totality of the circumstances known to the arresting officer, the officer has probable cause to believe that an offense has been committed in his presence.[33]

---

[29] For example, Carpenter testified in this trial that he decided to stop Trevino's vehicle when Trevino was turning into the gas station. On cross-examination, Carpenter acknowledged that in one of the earlier trials, he had testified that he decided to stop Trevino's vehicle before Trevino had exited the highway.

[30] *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

[31] *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

[32] *Id*.

[33] *See Amador v. State*, 275 S.W.3d 872, 879 (Tex. Crim. App. 2009); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005).

Here, to the extent that there were factual disputes as to whether Carpenter's radar was correctly calibrated and whether Trevino had committed a particular traffic offense, it was undisputed that Carpenter had observed Trevino driving significantly under the posted speed limit of 65 miles per hour on Highway 281, that Carpenter had also observed Trevino's vehicle "weaving in the lane" and "cross[ing] the [dotted white] line" separating the right and left lanes of traffic, and that the time Carpenter had observed Trevino's driving was approximately 3:30 a.m. on a Sunday morning. The totality of these undisputed facts, when combined with rational inferences from those facts, could lead Carpenter to reasonably suspect that the driver of the vehicle was intoxicated, thus making it lawful for Carpenter to initiate a traffic stop to investigate that offense.

We reach a similar conclusion when considering the lawfulness of the arrest. The factual disputes relating to the arrest concerned whether Carpenter had properly administered the field sobriety tests. However, other facts relevant to the probable-cause determination were not disputed, including that Carpenter had observed "a very strong odor of alcoholic beverage . . . coming from inside the vehicle itself"; that Carpenter had noticed Trevino's "eyes appeared to be glossed over" and that Trevino spoke with what Carpenter believed to be a slurred voice; that Trevino admitted to Carpenter that he had been drinking earlier that night; that Trevino told Carpenter that he was "lost" on his way home to San Antonio, despite claiming to have lived in San Antonio "all his life"; and that Trevino seemed to be unaware of the speed at which he had been driving or the time at which he had been stopped. These facts were in addition to the undisputed facts of Trevino's driving behavior, summarized above. The totality of these undisputed facts could provide Carpenter with probable cause to believe that Trevino had committed the offense of driving

12

while intoxicated, thus making it lawful for Carpenter to arrest Trevino for that offense. Accordingly, the disputed facts were not "essential" in deciding the lawfulness of either the traffic stop or the arrest, and the trial court was not required to include an Article 38.23 instruction in the jury charge for that reason.[34]

We overrule Trevino's third issue.

**Expert testimony**

During trial, the State asked Patricia Coatney, the phlebotomist who had tested Trevino's blood, whether it would be "possible" for a person who had consumed two 12-ounce beers between the hours of 10:00 p.m. and midnight to have a blood-alcohol level of .097 "five to six hours" later.[35] Coatney testified that it would not be possible. She also testified that alcohol would be in the process of being eliminated from the person's bloodstream during that time period. In his

---

[34] *See Madden*, 242 S.W.3d at 517-18; *Merriwether v. State*, 501 S.W.2d 887, 891 (Tex. Crim. App. 1973); *Cummings v. State*, 401 S.W.3d 127, 130-31 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Gerron v. State*, 119 S.W.3d 371, 377 (Tex. App.—Waco 2003, no pet.); *Reynosa v. State*, 996 S.W.2d 238, 240 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also Robinson v. State*, 377 S.W.3d 712, 720-22 (Tex. Crim. App. 2012) (Article 38.23 instruction not required when parties dispute legal significance of undisputed facts); *Davis v. State*, No. 03-07-00305-CR, 2008 Tex. App. LEXIS 6459, at *13-14 (Tex. App.—Austin Aug. 20, 2008, pet. ref'd) (mem. op., not designated for publication) (Article 38.23 instruction not required when disputed fact was not essential to lawfulness of traffic stop). *Cf. Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003) (concluding that Article 38.23 instruction was required in "case [that] involved a single, and simple, factual dispute—whether or not Middleton stopped at the stop sign. Its resolution determined whether the seized evidence could be considered. There were no other facts which could have established probable cause."); *Mills v. State*, 296 S.W.3d 843, 848 (Tex. App.—Austin 2009, pet. ref'd) (concluding that Article 38.23 was required when "[t]he sole articulable fact" that officer identified as basis for traffic stop was disputed and "[t]he State point[ed] to no other facts that could give rise to reasonable suspicion for the stop").

[35] "Five to six hours" was the approximate amount of time that had passed between when Trevino claimed to have stopped drinking and when his blood was drawn.

fourth issue, Trevino asserts that this was unreliable "retrograde extrapolation" testimony and that the trial court abused its discretion in admitting it.

"A trial judge's ruling on the admissibility of expert testimony is reviewed under an abuse-of-discretion standard and will not be disturbed if it is within the zone of reasonable disagreement."[36] "The admissibility of expert testimony is governed by Texas Rule of Evidence 702, which provides that '[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.'"[37] "In addition, Rule 705 provides that, if the court determines that 'the underlying facts or data do not provide a sufficient basis' for the expert's opinion under Rule 702, the opinion is inadmissible."[38] "For expert testimony to be admissible under these rules, the proponent of the expert scientific evidence must demonstrate by clear and convincing evidence that the testimony is 'sufficiently reliable and relevant to help the jury in reaching accurate results.'"[39]

"Retrograde extrapolation is the technique by which alcohol concentration at some earlier time is estimated based on the results of testing at some later time."[40] The Court of Criminal

---

[36] *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017) (citing *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

[37] *Id.* (quoting Tex. R. Evid. 702).

[38] *Id.* (citing Tex. R. Evid. 705(c)).

[39] *Id.* (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)).

[40] *Douthitt v. State*, 127 S.W.3d 327, 333 (Tex. App.—Austin 2004, no pet.) (citing *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001)).

14

Appeals has held that "the science of retrograde extrapolation can be reliable in a given case," but that before admitting such evidence, the trial court should consider such factors as: "(a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation."[41] "These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking."[42] In this case, Trevino argues that Coatney did not demonstrate sufficient knowledge of either Trevino's personal characteristics or the science of retrograde extrapolation to provide reliable testimony as to what Trevino's blood-alcohol content might have been at the time he had been driving.

To the extent that the challenged evidence might have been inadmissible retrograde extrapolation testimony, we cannot conclude on this record that Trevino was harmed by its admission. The erroneous admission of retrograde extrapolation testimony is non-constitutional error.[43] We may not reverse a conviction for non-constitutional error unless the error affected the defendant's substantial rights.[44] "A substantial right is affected when the error had a substantial and

---

[41] *Mata*, 46 S.W.3d at 916.

[42] *Id*.

[43] *Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex. Crim. App. 2003).

[44] *See* Tex. R. App. P. 44.2(b).

15

injurious effect or influence in determining the jury's verdict."[45] "In considering non-constitutional error, an appellate court must disregard the error if the court, 'after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'"[46] "[T]he reviewing court should consider the entire record when making this determination, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire if applicable."[47] Other factors include whether the State emphasized the error and whether there is "overwhelming evidence of guilt."[48]

At the outset, we observe that the challenged testimony was limited. Although Coatney testified that it would not be "possible" for a person who had consumed only two beers to have a .097 blood-alcohol level five to six hours after consumption and that alcohol would be in the process of being eliminated from the person's bloodstream during that time, the trial court sustained Trevino's objection when the State attempted to elicit more specific testimony from Coatney on how a person's blood-alcohol level would "respond" during that time period. At no point during Coatney's testimony did she provide a calculation or estimate of Trevino's blood-alcohol level at the time of the offense.[49] Moreover, the State did not emphasize Coatney's testimony in its closing

---

[45] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)).

[46] *Bagheri*, 119 S.W.3d at 763 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).

[47] *Id*. (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)).

[48] *Motilla*, 78 S.W.3d at 356-57.

[49] *Cf. Bagheri*, 119 S.W.3d at 758-59, 763 (concluding that retrograde extrapolation testimony was not harmless when expert estimated, based on test results showing blood-alcohol

16

argument. Instead, the State emphasized Deputy Carpenter's testimony and the numerous indicators of intoxication, summarized above, that Carpenter had observed Trevino exhibit before and during the traffic stop. And, on the occasions during its closing argument when the State specifically mentioned the blood-test results, the State did not attempt to connect that evidence to Coatney's testimony or argue to the jury that Trevino's blood-alcohol level at the time of the offense could be calculated or estimated based on his blood-alcohol level at the time of the test. In sum, there is nothing in the record from which we could conclude that Coatney's testimony on retrograde extrapolation had a "substantial and injurious" effect or influence in determining the jury's verdict. Accordingly, we cannot conclude that the trial court's error, if any, in admitting the challenged testimony affected Trevino's substantial rights.[50]

We overrule Trevino's fourth issue.

## CONCLUSION

We affirm the judgment of conviction.

---

levels of 0.107 and 0.113, "that a subject's alcohol concentration one hour earlier could have been between 0.107 and 0.143," and State emphasized throughout trial that defendant's alcohol concentration at time of offense was greater than .10).

[50] *See Coble v. State*, 330 S.W.3d 253, 286-87 (Tex. Crim. App. 2010); *Burns v. State*, 298 S.W.3d 697, 704-05 (Tex. App.—San Antonio 2009, no pet.); *Douthitt*, 127 S.W.3d at 337-39; *see also Neale v. State*, No. 14-15-00553-CR, 2017 Tex. App. LEXIS 5008, at *20-21 (Tex. App.—Houston [14th Dist.] June 1, 2017, no pet.) (op.) (concluding that admission of retrograde extrapolation testimony was harmless when evidence was not emphasized by State, there was "other compelling evidence of intoxication," and defendant "did not present any defense witnesses who undermined the strength of the State's evidence").

_____
Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   October 27, 2017

Do Not Publish

18