

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00101-CR

_____

DOUGLAS JOHN MANIFOLD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 31,227

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After Quinlan police officer David Nalls observed a vehicle swerving and its two right wheels crossing over the solid white line separating the lane of traffic from the partially paved shoulder, he initiated a traffic stop. That stop and the ensuing actions of the driver, Douglas John Manifold, Jr., resulted in Manifold being convicted by a Hunt County jury for possession of a controlled substance (methamphetamine) with intent to deliver[1] in the trial court's cause number 31,227 and with tampering with evidence[2] in its cause number 31,102. After enhancing Manifold's punishment with two prior felony convictions, the trial court sentenced him to fifty years' imprisonment on each conviction, to run concurrently. Manifold has filed a single brief challenging both convictions.

In this appeal,[3] Manifold challenges his possession conviction. Manifold asserts that the trial court erred in denying his motion to suppress evidence and denying his request for an Article 38.23[4] instruction on whether he drove on an improved shoulder. Manifold also challenges the legal sufficiency of the evidence supporting his conviction for possession of a controlled substance with intent to deliver. Because we find (1) Manifold's complaint regarding his motion to suppress was not preserved, (2) the trial court did not err in denying Manifold's request for an Article 38.23

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (West 2017).

[2]*See* TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (West 2016).

[3]Manifold's appeal of his conviction for tampering with evidence is addressed in an opinion released the same date as this opinion in our cause number 06-17-00103-CR.

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

instruction, and (3) sufficient evidence supports Manifold's conviction, we will affirm the judgment of the trial court.

*(1)*     *Manifold's Complaint Regarding His Motion to Suppress Was Not Preserved*

Manifold complains that the trial court erred in denying his motion to suppress evidence. Manifold does not cite to any place in the record that shows he filed a motion to suppress in cause number 31,227.  Further, the record shows that the trial court held a hearing on a motion to suppress only in the tampering case and that such hearing was held June 7, 2016.  The indictment in this case was handed down June 24, 2016.  The record contains no motion to suppress filed in, or a suppression hearing held in, this case.  To preserve a complaint for appellate review, the record must show a timely complaint to the trial court stating the grounds for the ruling sought by the complainant and that the trial court ruled on the complaint.  TEX. R. APP. P. 33.1(a).  Since the record in this case shows neither a complaint by Manifold nor a ruling by the trial court, Manifold has not preserved this complaint for our review.  We overrule this issue.

*(2)*     *The Trial Court Did Not Err in Denying Manifold's Article 38.23 Request*

Manifold also complains that the trial court erred in denying his request for an instruction under Article 38.23 of the Texas Code of Criminal Procedure regarding whether he actually drove on an improved shoulder.[5]  *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a).  Manifold argues that, by his cross-examination of Nalls, he raised a disputed issue of fact as to whether he drove on an

---

[5]At trial, Manifold never asked the trial court to submit the instruction required by Article 38.23 of the Texas Code of Criminal Procedure.  Rather, he submitted a proposed jury charge setting forth a definition of "reasonable suspicion" and the statutory definitions of "shoulder" and "improved shoulder" contained in the Texas Transportation Code, with a jury issue requiring the jury to determine whether Manifold drove on an improved shoulder and whether the police officer had reasonable suspicion to stop Manifold.  In their briefs, Manifold contends, and the State does not contest, that this was a request for an Article 38.23 instruction.

improved shoulder. Manifold bases this argument on his contention that the shoulder involved in this case does not meet the statutory definition of an improved shoulder. The State responds that whether the subject shoulder is an improved shoulder is a question of law and that therefore Manifold has not shown a disputed fact issue. We agree that Manifold has not shown a disputed fact issue.

A complaint that the trial court failed to give a requested instruction alleges jury charge error. We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We initially determine whether error occurred; if it has, we evaluate whether there was harm sufficient to require reversal. *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

Both the United States and Texas Constitutions require a routine traffic stop to be reasonable. *Berkemer v. McCarty*, 468 U.S. 420 (1984); *Earl v. State*, 362 S.W.3d 801, 802 n.2 (Tex. App.—Texarkana 2012, pet. ref'd); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. To conduct a constitutionally valid traffic stop, an officer must have a reasonable suspicion based on "specific[,] articulable facts that, when combined with rational inferences from those facts, would lead [the officer] to reasonably suspect that [the person stopped] has engaged or is (or soon will be) engaging in criminal activity." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). Since the reasonable-suspicion standard is an objective standard, the subjective intent of the officer making the stop is irrelevant. *Hamal*, 390

S.W.3d at 306; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos*, 15 S.W.3d at 151 (emphasis in original); *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd).

If a fact issue has been raised about whether the traffic stop violated the Constitution or laws of either the United States or Texas, the trial court should submit a jury instruction to disregard evidence the jury finds was obtained in violation the Constitution or laws of the United States or Texas. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Hamal*, 390 S.W.3d at 306. However, an Article 38.23(a) instruction is "mandatory only when there is a factual dispute regarding the legality of the search." *Williams v. State*, 356 S.W.3d 508, 525 (Tex. App.— Texarkana 2011, pet. ref'd) (citing *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005)). To be entitled to an instruction under Article 38.23(a), the following factors must be shown to exist: "(1) The evidence heard by the jury must raise an issue of fact; (2) The evidence on that fact must be affirmatively contested; and (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Williams*, 356 S.W.3d at 526. However, if there are facts not in dispute that are sufficient to support the legality of the challenged conduct, "the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Madden*, 242 S.W.3d at 510. Thus, when an officer articulates more than one reason for a traffic stop, the defendant must show that there is a disputed factual issue as to each reason to be entitled to an Article 38.23(a) instruction. *See, e.g.*, *Gerron v. State*, 119 S.W.3d 371, 376–77 (Tex. App.—

5

Waco 2003, no pet.) (when officer testified he saw defendant commit at least three traffic violations but defendant disputed only one, defendant not entitled to Article 38.23(a) jury instruction); *Reynosa v. State*, 996 S.W.2d 238, 240 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (same).

> If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Madden*, 242 S.W.3d at 510–11 (citations omitted).

At trial, Nalls initially testified that he observed Manifold's vehicle swerving and that the two right tires of the vehicle crossed the solid white line that separates the traffic lane from the shoulder. Nalls then activated his overhead lights to initiate the traffic stop. The jury was shown Nalls' dash-camera video recording, which shows Manifold's vehicle traveling on a clearly marked roadway containing three lanes, one in each direction and a left turn lane in the middle. As Manifold's vehicle was traveling in the same direction as the police car, Manifold's right wheels crossed onto the solid white line separating his traffic lane from the partially paved shoulder, returned into the traffic lane, and finally crossed over the solid white line to travel on the paved portion of the shoulder. The recording also shows that Nalls' overhead lights were activated immediately after this second encroachment. In addition, the recording shows that the paved portion of the shoulder on which Manifold drove extends about one-half of his vehicle's width past the solid white line. Nalls initially testified that Manifold had driven on an improved shoulder. On cross-examination, Nalls agreed that on the recording, he told Manifold that the reason he

6

pulled him over was for failure to maintain a single lane of traffic. He also testified that the solid white line on the right side designates where the traffic lane ends. After being read the statutory definitions of "shoulder"[6] and "improved shoulder,"[7] Nalls testified that he would consider this area as having an improved shoulder, even though he would not recommend somebody driving on it.

To obtain an Article 38.23 instruction, the defendant must "request[] an instruction on a specific historical fact or facts." *Madden*, 242 S.W.3d at 511. "The jury decides facts; the judge decides the application of the law to those facts." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art 36.13 (West 2007)). Manifold requested an instruction on whether he drove on an improved shoulder. He argues on appeal that Nall's testimony raised a disputed fact issue as to whether he drove on an improved shoulder. However, the determination of whether the partially paved shoulder in this case satisfies the statutory definition of an improved shoulder under the Texas Transportation Code is a matter of statutory construction. Statutory construction is a legal question that is determined by the court. *Cary v. State*, 507 S.W.3d 750, 756 (Tex. Crim. App. 2016). Thus, Manifold's requested jury instruction sought to require the jury to determine a legal question, not a factual one.

---

[6]The Texas Transportation Code defines a "[s]houlder" as "the portion of a highway that is: (A) adjacent to the roadway; (B) designed or ordinarily used for parking; (C) distinguished from the roadway by different design, construction, or marking; and (D) not intended for normal vehicular travel." TEX. TRANSP. CODE ANN. § 541.302(15) (West 2011).

[7]The Texas Transportation Code defines an "[i]mproved shoulder" as "a paved shoulder." TEX. TRANSP. CODE ANN. § 541.302(6) (West 2011).

7

Further, in this case, Nalls' undisputed testimony, supported by the evidence from the recording, shows that the two right tires of Manifold's vehicle crossed over the solid white line separating the traffic lane from the partially paved shoulder and traveled for several seconds on the shoulder. At trial, Nalls gave two reasons for the stop, both based on this undisputed evidence. First, he testified that Manifold had driven on an improved shoulder. On cross-examination, he testified that he stopped Manifold because he had failed to maintain his traffic lane. Manifold does not challenge this second explanation for the stop. When a roadway is divided into two or more clearly marked traffic lanes, the Texas Transportation Code requires the operator to "drive as nearly as practical entirely within a single lane." *Leming v. State*, 493 S.W.3d 552, 556 (Tex. Crim. App. 2016) (quoting TEX. TRANSP. CODE ANN. § 545.060(a)(1) (West 2011)). The Transportation Code also provides, "A person commits an offense if the person performs an act prohibited or fails to perform an act required by this subtitle." TEX. TRANSP. CODE ANN. § 542.301(a) (West 2011). Thus, it is an "offense to fail to remain entirely within a marked lane of traffic so long as it remains practical to do so." *Leming*, 493 S.W.3d at 559–60. Since it is undisputed that Nalls observed Manifold fail to remain entirely within a single lane of traffic, he had a reasonable basis for suspecting that Manifold had committed a traffic offense, and he could legally initiate the traffic stop. *See Zervos*, 15 S.W.3d at 151; *Graves v. State*, 307 S.W.3d at 489.

For these reasons, we find that the trial court did not err in denying Manifold's request for an Article 38.23 instruction. We overrule this issue.

*(3)*     *Sufficient Evidence Supports Manifold's Conviction*

Additionally, Manifold challenges the legal sufficiency of the evidence supporting his conviction.[8]  Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.  To obtain a conviction, the State was required to show, beyond a reasonable doubt, that Manifold (1) either individually or acting as a party with Shelby Late Manifold, (2) knowingly possessed, (3) with intent to deliver, (4) methamphetamine, a controlled substance, (5) in an amount of four grams or more, but less than two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d).

Nalls testified that, after he activated his overhead emergency lights, Manifold turned left onto Main Street.  He testified that, after the turn, Manifold rolled for a little bit before coming to

---

[8]To evaluate legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  In our rigorous review, we focus on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. denied) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)).  Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and may "believe all of a witnesses' testimony portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).  We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility."  *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

9

a stop. After Manifold's vehicle came to a stop, the female passenger, Shelby Manifold, left the vehicle and ran. Nalls testified that there was no reason Manifold could not safely stop sooner and that, when someone slowly rolls a vehicle before stopping, it means they are either positioning evidence or something is going on in the vehicle. Officer Daniel Catalan, who was riding with Nalls, chased after Shelby.

Nalls approached the vehicle and ordered Manifold to get out. When he began to frisk Manifold, Nalls felt there was going to be a little bit of confrontation. With Catalan out of sight, Nalls decided to put Manifold in the back of his patrol car without handcuffs. After a while, some deputies arrived, and Catalan returned with Shelby. They removed Manifold from the patrol car to frisk him. When Nalls tried to frisk him around the groin area, Manifold lifted his leg and forcefully put his elbow out to keep Nalls away from that area. At that point, Manifold was placed in handcuffs, the frisk was completed, and he was returned to the back seat of the patrol car under arrest.

When Catalan had returned with Shelby, Nalls learned that he had found two baggies containing methamphetamine on Shelby. The officers performed an inventory search of Manifold's vehicle and recovered two small digital scales, a daily planner, and several small plastic

---

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

baggies. Nalls testified that the small scales were the size typically used to weigh narcotics. He also testified that the baggies were clean, unused, and about one inch by two inches and that they were the size typically used for narcotics. He opined that Manifold's possession of these items indicated he was selling and distributing narcotics. They did not find any drugs in the vehicle.

After Nalls and Catalan took Manifold to the Hunt County jail, they returned to the Quinlan police station and viewed the video recording of the camera facing the back seat of their patrol car. Nalls testified that the recording showed Manifold, in the patrol car the first time and not handcuffed, pulling something out from the front of his pants and pushing in the back of his pants, the same area where he later resisted being frisked. Catalan was then told to contact Hunt County jail.

Officer Catalan confirmed Nalls' testimony regarding the stop and search of Manifold's vehicle. He added that the amount of crystal-like substance he found on Shelby caused him to believe that she was distributing it, since Shelby possessed more than was typically found on someone carrying it for personal use. He also confirmed the viewing of the back seat video and expressed his opinion that it looked like Manifold stuffed something in his rear end. Catalan also testified that he called the Hunt County jail and advised them of what they saw on the video and instructed them to search Manifold again. He testified that they retrieved a clear baggie containing a crystal-like substance.

The video recordings from the dash-mounted camera and the back seat camera were also played for the jury, demonstrating Manifold's apparent relocation of something in his pants. The dash-mounted camera recording confirms Nalls' testimony that, when Manifold was frisked after

11

the events in the back seat, Manifold bodily resisted Nalls' effort to frisk him around his buttocks and groin.

Ryan Hilbrand testified that he formerly worked at the Hunt County jail and that he performed the additional search of Manifold after Catalan called. After having Manifold strip, he had him bend over at the waist, and Hilbrand noticed what appeared to be a pink latex or nitrile glove coming out of his anus. Manifold denied anything was there at first and refused to bend over again. Eventually Manifold was convinced to remove the item himself, which consisted of something about the size of a ping pong ball wrapped in cellophane inside the glove. Brandon Westbrook, who assisted Hilbrand in the search, confirmed his testimony. After analysis, the item was determined to contain 13.46 grams of methamphetamine.

Lieutenant Charles Dominguez of the Quinlan Police Department testified that the amount of methamphetamine found on Manifold and Shelby, combined with the scales and baggies found in his vehicle, indicate that they were selling methamphetamine.

Manifold testified in his own defense. He testified that any drugs found at the scene belonged to Shelby and that he did not know she had them. He also claimed that he had been strip-searched when he was booked into jail and that no drugs were found on him. He explained that, after this search, he was placed in a holding cell with ten other prisoners, one of whom was his mechanic. His mechanic had the pink glove with the contraband and asked him to hold it for him since he was going to go before a judge. Manifold obliged and tucked it between his butt cheeks. He said he did not have a chance to dispose of it before the guards returned to take him for a second strip search. On cross-examination, he explained his actions in the back seat of the patrol car as

12

him removing a sex-toy. He claimed that it was not found by the police because it was black and dropped onto the ground when he was removed from the car. He also admitted that he had previous convictions for robbery, aggravated assault, burglary of a habitation, driving while intoxicated, and possession of methamphetamine.

Manifold argues that, since the only methamphetamine found in his possession was found while he was in jail, the State failed to show any connection between the methamphetamine and the scales and baggies found in his vehicle. Since the scales and baggies were central to the State's evidence that he had an intent to deliver the drugs, he reasons, this failure was fatal to the State's case. However, the jury heard the officers' testimony and viewed the video recording showing Manifold resisting any search around his buttocks and groin after he had been removed from the back seat of the patrol car. They also viewed the recording of Manifold's actions in the back seat of the patrol car that occurred minutes before his resistance to the search. In addition, they heard the testimony of the jail guards regarding Manifold's resistance to a search of his anal area and their discovery of the methamphetamine. Although Manifold had a different explanation for how the drugs came to be on his person, a reasonable jury could disbelieve his testimony.

A reasonable jury could infer from this evidence that Manifold possessed the drugs at the time of the traffic stop and that he had concealed them, first in the front of his pants and later in his anus. The officers' testimony that this amount of methamphetamine, combined with the scales and baggies found in the vehicle, indicated Manifold was selling the drug, would support the jury's finding that Manifold possessed the methamphetamine with intent to deliver the same. Therefore,

13

we find that the evidence is legally sufficient to support Manifold's conviction.  We overrule this issue.

We affirm the trial court's judgment.


Josh R. Morriss III
Chief Justice

Date Submitted:     November 2, 2017
Date Decided:       November 9, 2017

Do Not Publish